THE EAGLE FIRE COMPANY OF NEW-YORK *agt.* FLANAGAN
AND OTHERS.

*Questions discussed.*

1. Whether the evidence introduced before the master, on a reference to ascertain claims to a surplus fund in court, proved *usury* as to a judgment of one of the claimants ?

2. Whether the defence of usury can be set up by one claimant against another where the usury is charged as between one of the claimants and the judgment debtor, whose surplus funds are paid into court?

It appeared by the report of the master that he had paid into court the sum of $1,406.77, for surplus moneys arising

upon the sale of the mortgaged premises in this cause. On filing a notice of claim of William Duff to the whole, or some part of said surplus moneys, a reference was ordered to Thos. Addis Emmet, Esq., the master, to ascertain and report the amount due to said Duff, or to any other person, which was a lien upon said surplus moneys, and to ascertain the priorities of the several liens thereon, &c.

The evidence of the first claim introduced was made by Holbert Smales, Esq., upon a judgment in the supreme court, docketed May 2, 1842, in favor of Wm. L. Atwater against the said Edward Flanagan and others, upon which there was due $253.10, which had been assigned to Smales, and was then held by him in trust for William Duff. This claim was proved by H. Smales and George Buckham, Esqs.

The next claim was made by William Duff on a judgment in his favor against said Edward Flanagan, docketed in the supreme court on the 9th Nov. 1842, upon which there was then due $1,197.06, which was proved by Duff upon statement made under oath. Upon this judgment there was charged to be *usury*, by John Blake, a claimant as a mortgage creditor of said Edward Flanagan. Blake filed an affidavit of his claim, and called for an examination on the question of usury. The testimony taken on that question was as follows:

*Edward Flanagan*, who being duly sworn and examined this 29th day of April, 1844, answers as follows:

*Ques.* Being shown the warrant of attorney, upon which the judgment in favor of William Duff was entered up, and on which the claim is founded, and asked, "Is that your signature?"

*Ans.* Yes, it is, and my seal, and executed on the day it bears date, the 9th of Nov. 1842, as I believe.

*Q.* How long have you known Mr. Duff?

*A.* I have known him six or seven years.

*Q.* Have you had money transactions with him during those years?

*A.* Yes, sir, I have borrowed money of him.

*Q.* Has he become endorser upon your notes?

*A.* Yes, sir.

*Q.* Was the warrant of attorney executed, and judgment confessed, as security for money so borrowed, and endorsements paid by him?

*A.* Yes, sir.

*Q.* Was there any agreement or understanding with regard to interest, or was any bonus or sum of money agreed to be paid, or paid for any of the sums of money you received from Duff? (Question objected to, because leading, and because, if it aims at proving that anything more than legal interest was received, it is a matter that cannot be inquired into by Mr. Blake.) Answered, subject to the objection, and the question reserved for master's decision.

*A.* At the time I got this money from Mr. Duff, or before I got it, I wanted money very much, and I told Mr. Duff if he would let me have some money then, I would allow him one hundred dollars. It was for a thousand dollars which we spoke of first, and then he was on some of my notes.

Being cross-examined by counsel for Mr. Duff, and asked,

*Q.* Look at the checks Nos. 7, (check of Wm. Duff for $195.33,) 8, (check of Wm. Duff for $200,) 9, (check of Wm. Duff for $310,) and 10, (check of Wm. Duff for $200,) and say whether you received those checks from Mr. Duff, and the money on them from the bank?

*A.* Yes, sir.

*Q.* Look at the note marked No. 11, (note of Flanagan to Duff for $200, at ninety days,) and say whose note it is, for whose accommodation it was endorsed, and by whom it was finally taken up?

*A.* It is my note, endorsed for my benefit, and taken up by Mr. Duff.

*Q.* Look at the papers marked Nos. 12 (Flanagan's note to Duff for $315, at ninety days) and 13, (Duff's note to Flanagan for $315,) and explain the transaction they refer to?

*A.* They are exchange notes, and Mr. Duff's was taken up by him.

*Q.* At the time you confessed the judgment to Mr. Duff, did you give him any other security; and if so, state what it was?

*A.* I gave him an assignment of a lease on part of the property sold in this cause, in which a rent was payable of $425 per annum, subject to a right of renewal for five years more, at $500 per annum, and which was so renewed last May, and then held by Mr. Duff.

*Q.* Do you know how much money Mr. Duff received under that assignment?

*A.* He received in all $350. It is correctly stated in Exhibit No. 6, as he received it.

## EXHIBIT No. 6.

Judgment docketed 9th November, 1842, on a bond in the penalty of $3,000, conditioned for $1,500, as security for money loaned and for liabilities incurred, on which there is now due as follows:

| | | | |
|---|---|---:|---:|
| 1842, Nov. 8th. | My check on Chemical Bank, . . . . | $200.00 | |
| | Int. to 1st August, 1843, 8 mos. 23 days, | 10.19 | |
| | | | $210.19 |
| "   Nov. 10th. | My check on do. for . . . . . . . . | 310.00 | |
| | Int. to same time, 8 mos. 21 days, . . | 15.72 | |
| | | | 325.72 |
| "   "   " | My check on do. for . . . . . . . . | 200.00 | |
| | Int. to same time, 8 mos. 21 days, . . | 10.13 | |
| | | | 210.13 |
| "   "   14th. | My check on do. for . . . . . . . . | 195.33 | |
| | Int. to same time, 8 mos. 21 days, . . | 9.68 | |
| | | | 205.01 |
| 1843, Feb. 12th. | To paid your note, dated Nov. 11th, 1842, | 200.00 | |
| | Int. to same time, 5 mos. 16 days, . . | 6.44 | |
| | | | 206.44 |
| "   March 19th. | To my note lent you, 16th Dec. 1842, | | |
| | and now paid by me, . . . . . . | 315.00 | |
| | Int. to same time, 4 mos. 12 days, . . | 8.08 | |
| | | | 323.08 |
| | | | 1,480.59 |
| 1843, Aug. 1st. | Cr. By cash received of William & Henry Dunn, for rent, . . . . . . | 100.00 | 100.00 |
| | | | 1380.57 |
| | Int. to 1st November, 1843, 3 mos., . . | | 24.23 |
| | | | 1,404.80 |

The Eagle Fire Co. of New-York *agt.* Flanagan and others.

| | | |
|---|---|---:|
| 1843, Nov. 1st. | Cr. By rent received of same, . . . . . . . . . | $125.00 |
| | | 1,279.80 |
| | Int. to 1st. Feb. 1844, 3 mos., . . . . . . . . | 22.39 |
| | | 1,302.19 |
| 1844, Feb. 1st. | Cr. By rent as above, . . . . . . . . . . . | 125.00 |
| | | 1,177.19 |
| | Int. to 29th April, 1844, 2 mos. 28 days, . . . | 20.17 |
| | Am't due 29th April, 1844, . . . . . . . . | 1,197.36 |

Direct resumed.

Q. You stated in your direct examination that you applied to Mr. Duff for one thousand dollars, and you said you would allow him one hundred dollars for the same. Was this for the loan of the money, and what amount of money did he give you? (Objected to, for the reasons before given, and that the language of the witness is not properly stated. Objection allowed.)

Q. What sum of money did you apply for from Mr. Duff at first?

A. One thousand dollars.

Q. What sum of money did you promise to pay him for the use of, or loan of the same?

A. I told him I would give him one hundred dollars.

Q. How much money did he pay you of the thousand dollars?

A. He gave me nine hundred dollars in cash, and at the time he was on my notes, and I told him he might as well make it one thousand five hundred dollars, and include the notes he was on. This is about as near as I can think of.

Q. Are exhibits Nos. 11 and 13 the only notes he was then on for you?

A. Yes, sir. They are the notes he took up.

Q. Did not the judgments secure those payments?

A. Yes, sir; that was what it was intended for.

Q. Was all the cash you received, through those checks?

A. Yes, sir.

Question by counsel for Duff.

The Eagle Fire Co. of New-York *agt.* Flanagan and others.

*Q.* Was this bonus of one hundred dollars, that you speak of, exacted by Duff, or was it a voluntary offer on your part?

*A.* I offered it to him.

*Q.* Had you ever borrowed money of Mr. Duff before this?

*A.* Yes, a number of times.

*Q.* Had he ever exacted any thing beyond legal interest on any occasion before this?

*A.* I don't know that he has.

EDWARD FLANAGAN.

Sworn to before me, this 29th April, 1844.

THOS. ADDIS EMMET, *Master in Chancery.*

Patrick McBarron, jr., by Brady and Maurice, his solicitors, also filed a claim, being a judgment against Flanagan in common pleas, in favor of claimant, for $176.05, docketed November 23, 1842, upon which was claimed to be due $93.87.

The master reported that the claim of Hobert Smales in trust for Wm. Duff, for $255.16, was the first lien upon the surplus fund.

That the claim of Wm. Duff was the next oldest lien in point of time, but that in consequence of usury between the parties upon the loans and transactions for which the judgment was given as security, the said claim was void to the extent of the liens of the said other claimants, Patrick McBarron, jr., first, and John Blake second, who had the next and subsequent liens upon said surplus. The opinion given by the master on excluding the claim of Wm. Duff for usury, and allowing Blake to set it up and take advantage of it, is as follows:

The next claim to be considered is that of William Duff. This arises under a judgment in favor of Duff, against Edward Flanagan, by confession; and is likewise resisted by the claimant, Blake, on the ground that it was given to secure loans made by Duff to Flanagan, for which he, Duff, was to receive more than legal interest, and that, therefore, the judgment is void, for usury, as against said Blake. On the part of Duff, it is contended,

1st. That no usury exists, or has been proved.

2d. That, even if usury did exist, the claimant, Blake, has no right to set it up, or take advantage of it.

3d. That, even if usury were proved, it does not vitiate Duff's claim for the amount actually advanced by him.

To establish the usury, Edward Flanagan has been examined, who states that the warrant of attorney was executed, and the judgment confessed, as security for money borrowed, and endorsements paid.

The questions put to Flanagan, and answered by my decisions on the objections made by Duff's counsel, I have duly considered, and am of opinion that said questions are admissible and proper, and that his answers are legal testimony. Flanagan testified that he applied to Duff for $1,000, and said he would give $100 for it. And that of this $1,000, there was but $900 paid in cash, and when the judgment was given as security, the notes on which Duff was liable for Flanagan, amounting to $515, were included, and the sum of $1,500 was agreed upon as the amount of the indebtedness, and for this sum the judgment was accordingly entered up.

This testimony is not only unimpeached, but strongly confirmed by the facts in the case. The checks produced by Duff showed that the whole amount paid by Flanagan was but $905.33—that it was all paid within a week—that the security given to cover this, and the notes which were not yet matured, come within nine dollars of the amount stated by Flanagan; and the amount of the claim first put in before me by Duff is nearly one hundred dollars more than the statement of the account between the parties, with legal interest calculations.

The counsel for Duff claims the right to amend his claim. It is true, a party has a right to amend his claim before the master; but I should question very much the legality of allowing him to amend in a case like this, which would, in fact, enable him to disregard his claim founded on an usurious instrument or security, and go back to an account current, which had been merged in an usurious security. This would be nothing less than allowing the claimant to evade the statute of usury, after the fact of the usury had been established. But admitting that the claim as to the amount actually due can be altered or amended, the error must still stand, as a very strong fact in corroboration of the testimony of Flanagan, especially as the

amendment was made after the question of usury had been raised against the claim.   But does this amending the claim as to the amount due, in fact better the condition of the claimant? Is he not a judgment creditor? and is it not under his judgment he claims, let the amount be what it may ?   This certainly must be his position ; for if he waives his judgment, and claims under the account filed, he has no lien on the surplus.   Regarding, therefore, the claim as founded on the judgment, I am called upon to decide whether or not this judgment is tainted with usury.   On this point I am of opinion, not only from the positive testimony of Flanagan, which has not been impeached, and which I cannot therefore disregard, but from the facts before stated, corroborating said testimony, that said loans were made upon the bonus offered by Flanagan, and consequently on an understanding that said Duff was to receive more than legal interest for the same ; and therefore the judgment securing said loans is, under the statute, void.

In the case of *Colton* v. *Dunham*, (2 *Paige*, 273,) it is decided that whatever shape or disguise the transaction may assume, if a profit beyond the legal rate of interest is intended to be made out of the necessities or improvidence of the borrower, or otherwise, the contract is usurious.

And in 2 *Edwards' Chancery Reports, p.* 267, the decision is equally strong and clear, to the same effect, as also in the cases cited on the argument.   The cases in 2 *Pickering* and 8 *Cowen*, cited by the counsel for Duff, and particularly that in 8*th* and 9*th Paige*, I have closely examined, as in fact bearing on the most important question raised, that is, whether the claimant Blake has a right to avail himself of the usury established against Duff.   The case in 8 *Paige, Post* v. *Dart, page* 639, decides, " that the defence of usury may be set up by any one who claims under the mortgage deed in privity with him," &c.   " An usurious mortgage is not only void, as to the mortgagor, but as to all others who succeed to his rights in the mortgaged premises, either by operation of law or otherwise."

In order to take the present case out of the effect of this decision, it is contended that there exists no privity of estate

between Blake, the second mortgagee, and Flanagan, the mortgagor, and that to make such privity of estate, there should have been a foreclosure, or at least steps taken by Blake to foreclose. That he cannot be regarded as assignee of Flanagan, or as a purchaser under an execution, who becomes an assignee by operation of law, in both which cases a legal privity with the debtor is created. The object of the 136th rule was to lighten the expenses of foreclosure cases, without impairing in any way the rights of others against the mortgagor, or rather, in the equity of redemption on the mortgaged premises. Prior to this rule it was necessary to make all having any claim on the premises by mortgage, judgment, or otherwise, parties to the suit, and to serve copy of bills on them, &c., and to allow costs to all the defendants who should answer. The rule only alters the old practice of the court, and directs the mode by which the like class of creditors may now ascertain their rights in any surplus or equity of redemption, belonging to the mortgagor, without having it all consumed, or in a great degree diminished, by the expenses of unnecessary answers, &c. And in the case of the *Union Insurance Company* v. *Van Rensselaer*, (4 *Paige*, 85,) it is decided, that " in mortgage cases, defendants whose claims are upon the equity of redemption merely, and who have no interest in the mortgaged premises in opposition to the complainants claim, are not permitted to litigate their claims to the surplus as between themselves, until it is ascertained that there will be a surplus."

Why is not the mortgagor allowed to receive this surplus at once ? Because others may have succeeded to his rights in the mortgaged premises, either by operation of law or otherwise. And the 136th rule of the court now establishes the practice by which this fact is to be ascertained. If a second mortgagee establishes before the master his mortgage unsatisfied, he is entitled to the surplus. Why ? Because, by virtue of his mortgage, he has succeeded to the rights of the mortgagor. He claims under the mortgagor, and consequently in privity with him, not only by operation of law, but under and by virtue of his express act and deed, and as fully as an assignee, either in fact or by operation of law, could do. It makes no

matter how many or what kind of claimants there may be to the surplus, if a second mortgagee's claim is good at all, he cannot be regarded as a mere stranger, but must be considered as having succeeded to the rights of the mortgagor, either by operation of law, or otherwise; as between a bona fide grantee or mortgagee, no other question arises but that of priority. They are both regarded as claiming under the mortgagor, and as having succeeded to his rights; and if it is conceded that a grantee of the mortgagor, or a judgment creditor, whose judgment is a lien on the premises subsequent to giving of the mortgage, can avail themselves of the usury, I cannot see by what law or reason a second mortgagee, or any other person claiming under the mortgagor, can be prevented from doing the same.

This is certainly the extent of the decision in *Post* v. *Dart*, (8 *Paige*,) covering the whole ground, and in my mind is conclusively in favor of Blake's right to take advantage of this defence to the extent of his claim, and which I, therefore, decide to be prior to Duff's, and the second lien on the surplus in this case.

The vice chancellor of the first circuit, Hon. WM. T. McCOUN, on exceptions taken by Duff to the master's report, overruled the report so far as the same declared the claim of said Duff to be void in consequence of usury, &c., with costs, and confirmed the residue of the report.

On appeal by Blake, the chancellor, on the 28th Oct. 1845, dismissed the appeal and affirmed the order of the vice chancellor, with costs.

No written opinion was delivered by the vice chancellor or the chancellor. But it was stated in the affidavit of respondent's attorney, that both, at the time of making their decisions, expressed, as the grounds for the same, that no usury was proved against Duff.

Blake appealed to this court.

*John McKeon, Attorney, and*
*Anthony L. Robertson, Counsel* for appellant, *Blake.*

☞ Duff claimed surplus under a judgment—Blake under

The Eagle Fire Co. of New-York *agt.* Flanagan and others.

a junior mortgage, and he attacked the judgment of Duff on the ground of usury.

*First.* This court ought to sustain the decision of the master in the court of chancery.

1. Such decision ought not to have been reversed, except where a new trial would have been awarded in a court of law.

2. No new trial would have been awarded in this case in a court of law.

*Second.* The judgment of the respondent was to secure the payment of an usurious loan.

1. Usury, like any other fact, may be inferred from circumstances. (*Train* v. *Collins, admr. &c.,* 2 *Pick.* 145, 152.)

2. More reliance is to be placed on the acts than the language of parties in determining their intent, where it is criminal, and the object is to evade the law.

3. The object of the statute of usury being protection against extortion, a knowledge by the lender of the necessities of the borrower, at the time of the loan, will materially affect the construction of the acts out of which the contract of borrowing arises.

4. The loan which followed the offer of illegal interest without rejecting such offer, is to be presumed to have been made according to such offer.

5. The fact of the excess of the amount of the judgment given for the loan above the cash lent and notes to be paid being equal to the illegal interest offered, is prima facie evidence that it was for such illegal interest; and in the absence of proof that the judgment was to stand as security for a less sum than its amount, is conclusive.

6. The sum actually advanced having been proved to have been part of the sum sought to be borrowed, the corrupt agreement which is perfect, cannot be purified by a failure to complete it as originally proposed.

7. The fact of the respondent having claimed the larger sum with illegal interest included, was a circumstance tending strongly to corroborate the other proof of usury.

*Third.* The defence of usury can be set up by these complainants. (*Dix* v. *Van Wyck,* 2 *Hill R.* 522; *Post* v. *Dart,* 8 *Paige R.* 639.)

*Fourth.* The decree of the vice chancellor should be made to conform to the report of the master.

JOHN MCKEON, *Sol'r.*
ANTHONY L. ROBERTSON,
*of Counsel for appellants.*

☞ Judgment concludes parties, but not strangers. We could impeach it when set up as a lien to take away a fund belonging to us. ☜

☞ REPLY.—Vice chancellor and chancellor wrong in reviewing master on a question of fact. ☜

*Geo. Buckham, Attorney, and*
*J. W. Gerard, Counsel* for respondent, *Duff.*

*First.* There was no *usury proved.* No meeting of *minds.* A mere offer. No *corrupt agreement.* (2 *Cow.* 678.)

Usury must be clearly proved. (3 *Cow.* 284.)

*Second.* The judgment was not a *fixed, ascertained liquidation of indebtedness* between the parties, but was mere *security* for what he *might* advance *thereafter,* and for two notes lent, and then running. *All* the money, except $200, was got *after* the judgment given.

*Third.* No possible calculation that can be made shows that Flanagan's offer, either on $1,000 or $900, *was accepted* or *acted upon.* It was only *security,* and so Flanagan speaks of it in his evidence, for an *approximated amount.*

*Fourth.* To show that the judgment was a mere *security,* there is no proof or pretence that *Duff* was to take up the *notes:*— He did not in fact. They were *renewed,* and Duff took up the renewals.

☞ Exhibit 6.—Money paid from time to time after judgment—money advanced, $905.33. Notes, $515, with interest, shows no bargain. Judgment only by way of security for such money as should be advanced, and indemnity against notes. Notes not taken up, but renewed—if it had been a final arrangement, Duff would have paid the notes at once. He was not to pay at all, but only to have security—indemnity.

Lease also assigned by way of security. ☜

Roberts *agt.* Jones and Bogert.

*Fifth.* The *course of dealing* between the parties repels the *intent* of usury. He had lent him *money* before, and never on any thing more than *legal interest.* Duff is not a money lender.

*Sixth.* The master makes usury out of the *claim* put in by *Duff*, as he says. Duff never put in any such claim or knew it. His solicitor, knowing only of the judgment and credits, and not yet having inquired into the circumstances, in his *official* claim, (long before the reference came on,) made his calculations upon the whole judgment as due. But a *notice* or *pleading* of a solicitor, unsigned and unseen by a party, *cannot be evidence against him.*

*Duff* when *he* makes *his claim*, which he does by affidavit, *before* Flanagan was examined, states the balance on *his claim truly.*

GEO. BUCKHAM, *Solicitor for respondent, Duff.*

J. W. GERARD, *of Counsel.*

DECISION.—Judgment affirmed—unanimously.

NOTE.—In the absence of any written opinion or grounds of decision in this case, either by the vice chancellor, the chancellor, or this court, it is fair to presume, that the grounds of the decision expressed by the vice chancellor and the chancellor to the respondent's attorney at the time such decisions were made, were the grounds adopted by this court, to wit: that no *usury was proved* against the respondent, Duff.

*Not reported.*